## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

TERRENCE GILL,                                    :
on behalf of himself and
all others similarly situated,                    :        Case No. C2:05-cv-982

               Plaintiff,                    :        Judge Smith

      v.                                        :        Magistrate Judge Abel

BYERS CHEVROLET LLC                               :

and

GEO. BYERS SONS HOLDING INC.,

            Defendants.

## OPINION AND ORDER

Plaintiff Gill brings this class action to recover damages for alleged violations by defendants of (1) the Truth in Lending Act (2) the Fair Credit Reporting Act (3) the Equal Credit Opportunity Act (4) the Ohio Consumers Practices Act (5) breach of contract (6) the Ohio Retail Installment Sales Act (7) fraud and breach of fiduciary duties and (8) tortious nondisclosure.

This matter is before the Court on defendant Geo. Byers Sons Holding Inc.'s February 28, 2006 motion to dismiss (doc. 19). The parties' arguments are summarized in the section below.

### I. Facts

Byers Chevrolet LLC is a subsidiary of Byers Holding. Plaintiff Gill contends that Byers Holding "controls, directs, establishes and supervises the daily sales, marketing and financing policies, practices, and activities"of Byers Chevrolet. (Compl. ¶ 4).

On October 30, 2004, Gill visited Byers Chevrolet in order to shop for a 2004 Chevrolet Aveo. (Compl. ¶ 16). At this time, Gill's credit report reflected current unpaid medical and credit card debt, and he alleges he informed Byers Chevrolet of his credit problems. (Compl. ¶¶ 13-14). Gill contends that "pursuant to the defendants' routine and customary consumer sales, marketing and financing practices," Byers Chevrolet informed him that it was able to obtain 5.59% APR financing through Citizen Automobile Finance, Inc. for the financed purchase price, payable in 72 monthly installments of $235. (Compl. ¶ 17; Exhibit 2)

Gill states that he was pleasantly surprised by the deal because of his poor credit history and signed a document at Byers Chevrolet entitled "Retail Installment Contract," agreeing to the transaction as described above. (Compl. ¶¶ 18, 22; Exhibit 2) He additionally paid a deposit of $1629.00 (Exhibit 2), and traded in his 1998 Ford Windstar, which had a remaining balance of $3,990.85 due to the lender. (Compl. ¶¶ 40-41). Gill alleges that the defendants agreed to pay the remaining balance on the Windstar to the lender. (Compl. ¶ 42).

In addition to the Retail Installment Contract, Gill also signed a document entitled "Spot Agreement," that states that if Byers Chevrolet is unable to obtain financing within five days, then Gill would have to either return the Aveo, or pay the balance. (Compl. ¶39; Exhibit 3) Gill contends that he expressed confusion to Byers Chevrolet about why he must sign the form as it was his understanding that financing had already been obtained at the 5.59% rate. (Compl. ¶ 36). Byers Chevrolet then purportedly told Gill that the Spot Agreement was "just a formality." (Compl. ¶ 38). After the paperwork was signed, Gill drove home in a new Aveo from the lot. (Compl. ¶ 43).

Gill alleges that defendants failed to pay the balance of the Windstar loan in a timely

2

fashion, despite his repeated calls Byers Chevrolet requesting that it do so. (Compl. ¶¶ 44-46).
He also contends that when Citizens' Automobile Finance, Inc., refused to purchase his contract,
the defendants, without his permission, attempted to sell his loan to other financing companies.
(Compl. ¶¶ 48, 51).  Gill further asserts that defendants eventually found a company to finance
the purchase, but at 10.95% interest rather than the previously agreed upon 5.59%. (Compl. ¶
62).

On December 2, 2004, the finance manager at Byers Chevrolet met with Gill and
purportedly told him that because Citizen would not buy his contract at the 5.59% interest rate,
Gill must immediately make a decision to either must pay the remaining balance on the car in
cash, return the car, or accept the 10.95% interest rate that defendants had been able to obtain
with an alternate financer. (Compl. ¶¶ 56, 59-60, 62-63).  Gill alleges that a combination of
factors, including his need for reliable transportation and the default on the Windstar loan caused
him to sign another Retail Installment Contract at the higher interest rate. (Compl. ¶¶ 66-67).

On November 11, 2005, Gill filed a complaint against both Byers Chevrolet for harm
allegedly caused by the use of its routine and customary consumer sales, marketing and financing
practices and Byers Holding because of its alleged establishment, direction, control, and
supervision of these practices.

## II.  Summary of Parties' Arguments

### A.  Defendant's Argument

Byers Holding's motion to dismiss is based on three grounds.  First, it claims that Gill has
not pled facts sufficient to pierce the corporate veil.  Next, it contends that Gill has not pled facts
sufficient to state a claim against Byers Holding in its own right. Finally, Byers Holding argues

3

that simply because it has allowed Byers Chevrolet to use the "Byers" name, does not render it potentially liable for the acts of Byers Chevrolet on basis of the namesake.

First, Byers Holding contends that Gill has failed to set forth facts in the amended complaint that would allow it to pierce the corporate veil, which it deems necessary to hold Byers Holding liable for the actions of its subsidiary, Byers Chevrolet. In support of its argument, Byers Holding states that in order to pierce the corporate veil, Gill must show that (1) the parent corporation maintained such a high level of control over the subsidiary such that the subsidiary had "no separate mind," (2) the parent used its control over the subsidiary in a "manner as to commit fraud or an illegal act" against the plaintiff, and (3) because of this control, plaintiff suffered harm. *Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Co., Inc.*, 67 Ohio St. 3d 274, 289 (Ohio 1993). Byers Holding contends that Gill failed to allege any of these necessary factors in his amended complaint and, thus, the action should be dismissed for failure to state a claim upon which relief can be granted.

Byers Holding next claims that its motion to dismiss should be granted even if the *Belvedere* factors are inapplicable. As it argues, Gill's amended complaint still fails because it is "wholly silent as to any actions taken by Byers Holding." Thus, Byers Holding contends the amended complaint was insufficient to give it fair notice of the grounds of its purported liability and, consequently, it should be dismissed.

Finally, Byers Holding argues that simply because it allowed Byers Chevrolet to use the "Byers" name does not allow for an assumption of liability for the namesake's acts.

4

**B. Plaintiff's Response**

Gill is contending that the routine and customary consumer sale, marketing and financing practices as conceived of and implemented by Byers Holding and put into use by Byers Chevrolet are in violation of several federal and state laws. He is also claiming that these policies resulted in direct injury to himself and a class of similarly situated others.

Specifically, Gill is claiming that according to the policy routinely followed at Byers Chevrolet that was implemented by Byers Holding, Byers Chevrolet misrepresented to Gill that he had a confirmed contract to purchase a car from it at a certain price for a certain interest rate, when in fact, Byers Chevrolet had no intention of fulfilling the contract at the agreed upon rate unless it were able to find a company willing to finance the car to Gill at that rate.

In response to Byers Holding's first argument that his amended complaint is not sufficiently well-pled in order to pierce the corporate veil, Gill states that is he is not attempting to pierce the corporate veil in order to hold Byers Holding liable. Instead, Gill alleges that Byers Holding itself implemented and controlled wrongful policies at Byers Chevrolet which directly resulted in injury to himself and the rest of the class. Thus, because Gill contends that Byers Holding is directly, rather than vicariously, liable, he argues that the *Belvedere* standard cited by the defense is inapplicable to this case.

In reply to Byers Holding's claim that the amended complaint was not sufficient to state a claim against Byers Holding in its own right, Gill argues that his amended complaint was sufficient to put Byers Holding on notice of his contention that "Byers Chevrolet dealt with the plaintiff *for* Geo. Byers Sons Holding, Inc., and did so pursuant to customary sale, marketing, and financing procedures for which Geo. Byers Sons Holding, Inc. is responsible." Gill contends

5

that the nature of his claim does not require him to plead with specificity under Rule 9, and further states that the allegations contained in his amended complaint, specifically paragraphs ¶3-4, ¶17-19, ¶22-28, are sufficiently well-pled to withstand the motion to dismiss.

Finally, though Gill mentions Byers Holding's namesake argument in his reply memorandum, he does not contradict it.

### III. Motion to Dismiss

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the amended complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515 (1972); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1982); *Smart v. Ellis Trucking Co.*, 580 F.2d 215, 218 n.3 (6th Cir. 1978); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). Although the court must apply a liberal construction of the complaint in favor of the party opposing the motion to dismiss, *Kugler v. Helfant*, 421 U.S. 117, 125-26 n.5 (1975); *Smart*, 580 F.2d at 218 n.3; *Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975), a court will not accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations. *See Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971); *Sexton v. Barry*, 233 F.2d 220, 223 (6th Cir. 1956). In reading a complaint, however, a court will indulge all reasonable inferences that might be drawn from the pleading. *See Fitzke v. Shappell*, 468 F.2d 1072, 1076 n.6 (6th Cir. 1972).

When determining the sufficiency of a complaint in the face of a motion to dismiss pursuant to Rule 12(b)(6), a court will apply the principle that a" complaint should not be

dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See also McClain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232 (1980); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983); *Neil v. Bergland*, 646 F.2d 1178, 1184 (6th Cir. 1981); *Parker v. Turner*, 626 F.2d 1, 7 (6th Cir. 1980). Because the motion under Rule 12(b)(6) is directed solely to the complaint itself, *Roth Steel Prods.*, 705 F.2d at 155; *Sims v. Mercy Hosp. of Monroe*, 451 F.2d 171, 173 (6th Cir. 1983), the court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail. *See Scheuer*, 416 U.S. at 236; *McDaniel v. Rhodes*, 512 F.Supp. 117, 120 (S.D. Ohio 1981). A federal court cannot consider extrinsic evidence in determining whether a complaint states a claim upon which relief can be granted. *See Roth Steel Prods.*, 705 F.2d at 155; *Sims*, 451 F.2d at 173.

A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. *See United States v. School Dist. of Ferndale*, 577 F.2d 1339, 1345 (6th Cir. 1978); *Westlake v. Lucas*, 537 F.2d at 858; *Dunn*, 697 F.2d at 125. Rule 8(a)(2) simply requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Dunn*, 697 F.2d at 125; *Westlake*, 537 F.2d at 858.

The court will grant a defendant's motion for dismissal under Rule 12(b)(6) if the complaint is without any merit because of an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an

insurmountable bar to relief indicating that the plaintiff does not have a claim. *See generally Rauch v. Day & Night Mfg Corp.*, 576 F.2d 697 (6th Cir. 1978); *Ott v. Midland-Ross Corp.*, 523 F.2d 1367; *Brennan v. Rhodes*, 423 F.2d 706 (6th Cir. 1970).

It is not necessary that a plaintiff set forth in a complaint the legal theory on which plaintiff relies if the complaint sets forth sufficient factual allegations to state a claim showing that plaintiff is entitled to any relief which can be granted. *See Rohler v. TRW, Inc.*, 576 F.2d 1260, 1264 (7th Cir. 1978); *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974); *New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20, 24-25 (4th Cir. 1963).

## IV. Analysis

### A. Piercing the Corporate Veil

The U.S. District Court of the Southern District of Ohio has cited *Belvedere* as "the controlling authority on piercing the corporate veil in Ohio." *Winston v. Leak*, 159 F. Supp. 2d 1012, 1018 (S.D. Ohio 2001). Thus, in order to successfully pierce the corporate veil, the plaintiff must prove all of the *Belvedere* factors. However, the courts are not entirely uniform regarding whether a plaintiff must specifically allege in the amended complaint that defendant meets all of the *Belvedere* criteria in order to survive a Rule 12(b)(6) motion.

The U.S. District Court for the Northern District of Ohio has dismissed a plaintiff's complaint on the basis that it failed to allege that the defendant's conduct met the necessary *Belvedere* factors. *Salatin v. Trans Healthcare of Ohio, Inc.*, 170 F. Supp. 2d 775, 782 (N.D. Ohio 2001). However, the complaint in *Salatin* fails to allege anything other than that the subsidiary's breach "by extension, may extend to [the parent] depending upon the relationship between" the parent and subsidiary. *Id.*

8

The Ohio Court of Appeals of the 10th District has held that a plaintiff may proceed on a theory of piercing the corporate veil even when his complaint does not specify any intent to proceed under the doctrine. *Dalicandro v. Morrison Road Rev. Co.*, Nos. 00AP-619 and 00AP-656, 2001Ohio App. LEXIS 1765, at *20-21 (April 17, 2001). A plaintiff's complaint simply must contain "some indication that evidence on the issue would be introduced at trial." Id. at * 20. In *Dalicandro*, the plaintiff's complaint was held to be sufficient when it named the shareholder defendant as an individual and alleged that he personally used his company to engage in prohibited conduct. *Id.* at *20-21.

The Southern District of Ohio granted a Rule 12(b)(6) motion to dismiss a plaintiff's complaint that listed seven corporations as defendants in her employment action but failed to claim any specific wrongdoing on their parts. *Winston,* 159 F. Supp. 2d at 1017. The complaint merely stated that the plaintiff's employer was a principle in each of the corporations without making any allegations that "even with a liberal reading, that imply any connection between the employment agreement and the seven Corporate Defendants." *Id.*

These decisions show that if Gill is seeking to pierce the corporate veil in order to hold Byers Holding liable, then he must allege facts in his amended complaint that, at the very least, implicate the *Belvedere* factors. However, Gill has expressly disavowed that he is attempting to pierce the corporate veil in this case; therefore, he regards both Byers Chevrolet and Byers Holding as independent and autonomous entities that are responsible for their own respective actions. Thus, the *Belvedere* factors are inapplicable, and Gill's amended complaint must simply satisfy general pleading requirements as to each defendant.

9

### B. Pleading Standard

Rule 8 requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," while Rule 9 enumerates specific claims that must be pled with particularity. Fed. R. Civ. P. 8(a)(2). The U.S. Supreme Court has stated its reluctance to require pleading with particularity beyond what is enumerated in Rule 9. *Swierkiewixz v. Sorema N.A.*, 534 U.S. 506, 513 (2002)( "this Court, however, has declined to extend such exceptions to other contexts"). Thus, Gill is only required to meet the Rule 8 standard.

Gill makes a very general statement in his amended complaint that he is entitled to relief against Byers Holding because it directed, controlled, established, and supervised wrongful policies at Byers Chevrolet. However, Gill makes no allegation that Byers Holding played any personal role in his purchase of the Aveo or in Byers Chevrolet's offer of financing to him. It is a "fundamental rule of corporate law" that a shareholder–such as Byers Holding–is not liable for the acts of the corporations it owns. *See Belvedere*, 67 Ohio St. 3d at 287. While the owner of a corporation can act independently in combination with the corporation to deprive a third party of a legal right, that is not what the amended complaint alleges here. Byers Chevrolet is the only party alleged to have dealt with Gill and to have acted to violate the statutes or breach the contract at issue. The amended complaint fails to state a claim against Byers Holding upon which relief can be granted.

10

## V. Conclusion

For the reasons stated above, the Court HOLDS that defendant's February 28, 2006

motion to dismiss (doc. 19) is meritorius; and, therefore, it is GRANTED. Defendant Geo. Byers

Sons Holding Inc. is DISMISSED. Byers Chevrolet LLC remains a defendant.

_____
United States District Judge

11