## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| TERRENCE GILL,<br>on behalf of himself and<br>all others similarly situated, | : | |
| | : | Case No. C2:05-cv-982 |
| Plaintiff, | : | Judge Smith |
| v. | : | Magistrate Judge Abel |
| BYERS CHEVROLET LLC, et al. | : | |
| Defendants. | | |

### OPINION AND ORDER

Plaintiff Gill brings this class action to recover damages for alleged violations by

defendants of (1) the Truth in Lending Act (2) the Fair Credit Reporting Act (3) the Equal Credit

Opportunity Act (4) the Ohio Consumers Practices Act (5) breach of contract (6) the Ohio Retail

Installment Sales Act (7) fraud and breach of fiduciary duties and (8) tortious nondisclosure.

This matter is before the Court on defendant Byers Chevrolet's February 28, 2006 motion

to dismiss plaintiff's first, second, and sixth claims (doc. 21). The parties arguments are

summarized in the section below.

**I. Facts**

On October 30, 2004, Gill visited Byers Chevrolet in order to shop for a 2004 Chevrolet

Aveo. (Am. Compl. ¶ 16). At this time, Gill's credit report reflected current unpaid medical and

credit card debt, and he alleges he informed Byers Chevrolet of his credit problems. (Am. Compl.

¶¶ 13-14). Gill contends that according to defendant's "routine and customary consumer sales,

marketing and financing practices," Byers Chevrolet informed him that it was able to obtain

1

5.59% APR financing through Citizen Automobile Finance, Inc. for the financed purchase price, payable in 72 monthly installments of $235. (Am. Compl. ¶ 17; Exhibit 2)

Gill states that he was pleasantly surprised by the good rate because of his poor credit history and contends that he expressed this surprise to defendant. (Am. Compl. ¶¶ 18-19). He alleges that Byers Chevrolet then told him that the 5.59% interest rate was available to him because it had an "in with the bank." Gill states he then signed a document at Byers Chevrolet entitled "Retail Installment Contract," agreeing to the transaction as described above. (Am. Compl. ¶¶ 18, 22; Exhibit 2) He additionally paid a deposit of $1629.00 (Exhibit 2) and traded in his 1998 Ford Windstar, which had a remaining balance of $3,990.85 due to the lender. (Am. Compl. ¶¶ 40-41). Gill alleges that the defendants agreed to pay the remaining balance on the Windstar to the lender. (Am. Compl. ¶ 42).

In addition to the Retail Installment Contract, Gill also signed a document entitled "Spot Agreement," that states that if Byers Chevrolet is unable to obtain financing within five days, then Gill would have to either return the Aveo, or pay the balance. (Am. Compl. ¶39; Exhibit 3) Gill contends that he expressed confusion to Byers Chevrolet about why he must sign the form as it was his understanding that financing had already been obtained at the 5.59% rate. (Am. Compl. ¶ 36). Byers Chevrolet then purportedly told Gill that the Spot Agreement was "just a formality." (Am. Compl. ¶ 38). After the paperwork was signed, Gill drove home in a new Aveo from the lot. (Am. Compl. ¶ 43).

Gill alleges that defendants failed to pay the balance of the Windstar loan in a timely fashion, despite his repeated calls Byers Chevrolet requesting that it do so. (Am. Compl. ¶¶ 44-46). He also contends that when Citizens' Automobile Finance, Inc., refused to purchase his

contract, the defendants, without his permission, attempted to sell his loan to other financing companies. (Am. Compl. ¶¶ 48, 51, Exhibit 4). Gill claims that as a result of Byer's attempts to sell the contract, that he began to receive notice from banks and finance companies rejecting Gill further asserts that defendants eventually found a company to finance the purchase, but at 10.95% interest rather than the previously agreed upon 5.59%. (Am. Compl. ¶ 62).

On December 1, 2004, Gill claims that a salesperson from Byers Chevrolet called him and informed him that the dealership had mistakenly made out the sales agreement in the name of "Terrance Vill" and it needed him to come back in order to correct the paperwork. (Am. Compl. ¶¶ 53-54). The next day, the finance manager at Byers Chevrolet met with Gill and purportedly told him that because Citizen would not buy his contract at the 5.59% interest rate, Gill must immediately make a decision to either must pay the remaining balance on the car in cash, return the car, or accept the 10.95% interest rate that defendants had been able to obtain with an alternate financer. (Am. Compl. ¶¶ 56, 59-60, 62-63). Gill alleges that a combination of factors, including his need for reliable transportation and the default on the Windstar loan caused him to sign another Retail Installment Contract at the higher interest rate. (Am. Compl. ¶¶ 66-67).

On November 11, 2005, Gill filed a amended complaint against both Byers Chevrolet for harm allegedly caused by the use of its routine and customary consumer sales, marketing and financing practices.

## II.  Summary of Parties' Arguments

### A.  Defendant's Argument

#### 1.  First Claim–Truth in Lending Act

Byers Chevrolet denies that it is a creditor who can be subject TILA's regulations. However, Byers Chevrolet maintains that even if it is, Gill still fails to state in his amended complaint that it has violated any provision of TILA.

First, Byers Chevrolet argues that both the October 30 and the December 2 retail installment contracts complied with every requirement of TILA, including listing all mandatory disclosures and segregating and conspicuously titling the disclosures in a separate box called "Truth-in-Lending Disclosures."  Byers Chevrolet maintains that Gill does not actually allege that it failed to make these mandatory disclosures and segregations.  Rather, Byers Chevrolet contends that Gill is complaining that the disclosures made on the October 30 contract were rendered inaccurate by a subsequent occurrence.

Byers Chevrolet argues that it is undisputed in the amended complaint that if any inaccuracy existed in the October 30 contract, it was only because of the occurrence of a valid condition subsequent–the failure to get a lender to purchase the contract at the 5.59% interest rate.  Thus, the disclosures in the October 30 contract were accurate at the time they were made. To support its argument, Byers Chevrolet cites a section of TILA which states that if the information disclosed "is subsequently rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of this chapter."  15 U.S.C. §1634 (1968).  Byers Chevrolet also cites case law from both the Northern District of Illinois and the Seventh Circuit

4

which hold that disclosures rendered inaccurate by a subsequent inability to obtain third-party
financing do not violate TILA.

### 2. Second Claim–Fair Credit Reporting Act

Byers Chevrolet contends that the facts alleged in the amended complaint are not
sufficient to state a claim for relief on basis of the Fair Credit Reporting Act (FCRA), 15 U.S.C.
§1681(b), (m), and (q). First, Byers Chevrolet argues that Gill does not allege in his amended
complaint that it is a consumer reporting agency as defined in the FCRA, nor does he allege
facts, that if true, would support defining it as a consumer reporting agency.

Next, Byers Chevrolet assumes for the purposes of this motion only, that it is a "user" of
consumer reports within the meaning of the FCRA. However, Byers Chevrolet asserts that Gill
has not alleged facts that show it ever used, obtained, or furnished his consumer report to any
person. In fact, Byers Chevrolet contends that Gill's amended complaint only alleges that "the
financial institutions defendants solicited to purchase from defendants a credit sales contract at
whatever terms available each accessed and examined Mr. Gill's credit report." (Am. Compl..
¶51). Thus, Byers Chevrolet argues that Gill has not effectively alleged that it obtained his
consumer report and therefore, his claim based on 15 U.S.C. §1681(b) and (q) must fail.

Finally, Byers Chevrolet argues that Gill cannot bring an action under 15 U.S.C.
§1681(m) as a result of the 2003 amendment to the FCRA that states there is no private right of
action under this section.

### 3. Sixth Claim–Ohio Retail Installment Sales Act

Byers Chevrolet contends that the only particular violation alleged in the amended

complaint is that it collected a documentary service charge in excess of the limits established by

the Ohio Retail Installment Sales Act (RISA). However, Byer Chevrolet claims a 2003

amendment to RISA permits a retail seller to charge a documentary service fee which will not

exceed $100. O.R.C. §1317.07 (previously, the limit was $50). As the fee at issue was alleged

to be only $95, Byers Chevrolet contends that the fee was within the legal limit and so the

amended complaint fails to state a claim under which relief can be granted.

Byers Chevrolet also maintains that even if the statute is unconstitutional as Gill alleges it

to be in the amended complaint, Gill has still failed to state a claim upon which relief can be

granted. As the amendment was in force at the time of the documentary service charge at issue,

Byers Chevrolet argues that its compliance with the amendment protects it from liability.

### B. Plaintiff's Arguments

#### 1. First Claim–Truth in Lending Act

Gill states that he alleged sufficient facts in his amended complaint regarding his TILA

claim to withstand Byers Chevrolet's Rule 12(b)(6) motion. He rests this contention on three

grounds: first, that the amended complaint alleges that the disclosures on the October 30 contract

were inaccurate due to the defendant's fraudulent intent; second, that exhibit 1 of the contract

shows that defendant charged Gill a finance charge which was wrongfully included in the amount

financed in violation of TILA; and third, an advancement in sale price was imposed on him based

on the fact that he was purchasing on credit rather than on cash in violation of TILA.

First, Byers Chevrolet argues that Gill's amended complaint does not dispute that the

6

disclosures in the October 30 contract were only rendered inaccurate by a properly invoked condition subsequent. However, Gill contends that his amended complaint does dispute when the disclosures were inaccurate, the reasons behind the inaccuracy, and whether the Spot Agreement constituted a valid condition subsequent. Gill cites that ¶¶23-26 of the amended complaint allege that the disclosures on the October 30 contract were deliberately false at the time they were made because Byers Chevrolet had no actual intention of extending credit at the disclosed rate at the time of contract formation. Also, Gill makes the contention that the amended complaint at ¶¶28-30 alleges that the retail sales contract was integrated, and, therefore, the spot agreement was not a valid modification that allowed Byers Chevrolet to add a condition subsequent to the contract. Further, Gill states that he alleges in the amended complaint that the spot agreement was not properly exercised because Byers Chevrolet did not "timely or properly notify him of their decision to reject the October 30, 2004 credit terms."

Second, Gill states that the retail installment contract attached to the amended amended complaint suggests Byers Chevrolet's disclosure of the "finance charge," the "amount financed," and the APR were inaccurate for additional reasons. Gill alleges that the $55 charged by Byers Chevrolet for single interest insurance should have been listed as a finance charge under Regulation Z, but that Byers Chevrolet inaccurately included it in the amount financed. Gills asserts that the FCRA provides an exception to this requirement if "all rights of subrogation against the customer have been waived." It is Gill's contention that the October 30 contract did not waive Byers Chevrolet's rights of subrogation against him, and therefore the exception does not apply. Therefore, Gill contends that the exhibit of the October 30 contract to his amended complaint shows a violation of TILA because of the purportedly inaccurate categorization of the

7

\$55 insurance fee.

Third, Gill contends that if an advancement in sale price is imposed because a consumer is buying on credit, then it constitutes a finance charge. At ¶70, the amended complaint alleges that the price of the Aveo lessened from the October 30 to the December 2 contracts. According to Gill, this discount in price could potentially be an advancement in sale price "attributable to the fact that [his] purchase was made on credit, not for cash." Thus, Gill contends that his amended complaint contains facts sufficient to allege a TILA claim upon which relief may be granted.

## 2. Second Claim–Fair Credit Reporting Act

First, Gill withdraws his allegation of a claim for relief for any violation by Byers Chevrolet of 15 U.S.C. §1681(m). Next, Gill disputes Byers Chevrolet's contention that the amended complaint failed to allege that it obtained, used, or furnished Gill's consumer reports by citing ¶51 which asserts that Byers Chevrolet "shopped" the Oct. 30, 2004 contract to numerous lenders without Gill's permission. Gill states that it is counsel's information and belief that these efforts customarily and routinely involve the dissemination of information about Gill's creditworthiness, including the forwarding of actual consumer reports or the extraction of information from these reports, to these financing companies. Thus, Gill contends that he has alleged facts sufficient to support an interest that Byers Chevrolet impermissibly used, obtained or furnished his consumer report.

Gill contends he did allege facts sufficient to support an inference that Byers Chevrolet is consumer reporting agency. He again refers to ¶51 of the amended complaint which claims that the defendant shopped the October 30 contract to numerous parties. He asserts that it is the job

8

of a factfinder to determine if this activity can be construed as legally subjecting Byers Chevrolet

to the obligations and prohibitions applicable to a consumer reporting agency.

Gill then asserts that ¶51 of the amended complaint also states a claim under 15 U.S.C.

§1681(b)(f), which prohibits use of a consumer report for any unauthorized purpose. Gill

contends he never explicitly authorized Byers Chevrolet to obtain or use his credit report for any

purpose. While he arguably implicitly authorized Byers Chevrolet to provide his consumer

information to Citizens, he maintains that he did not implicitly authorize it to give this

information to anyone else. Thus, as the amended complaint alleges that Byers Chevrolet had no

permission to obtain or use his consumer report to shop around for alternate financiers and did so

in violation of 15 U.S.C. 1681(b)(f), Gill contends that he has stated a FCRA claim upon which

relief can be granted.

### 3. Sixth Claim–Ohio Retail Installment Sales Act

In response to Byers Chevrolet's argument that he has only alleged one violation of

RISA, Gill states that Rule 8 does not require him to plead any "particular" violation. Further, he

states that it is counsel's information and belief that he can state in good faith that discovery is

likely to identify violations of RISA in addition to the particular inappropriate $95 documentary

service charge which he alleges in his amended complaint.

Gill argues that, despite the 2003 amendment to O.R.C. §1317.07 increasing the

allowable charge for documentary service fees to $100, Byers Chevrolet's $95 documentary

service charge is in violation of RISA. He alleges in his amended complaint that amendment was

attached to a budget appropriations bill at the time of passage and is therefore unconstitutional

under the Ohio Constitution. Because, as he alleges, Byers Chevrolet does not challenge his

9

reading of the amendment as unconstitutional, then "Byers' motion assumes that [the amendment] is void under the Ohio Constitution."

Gill addresses Byers Chevrolet's claim that its good faith compliance with the statute is an absolute bar to liability as a "previously unknown defense" that Byers fails to support with any authority. He contends that Byers Chevrolet has the burden of pleading and proving its own good faith compliance, and hints that this could be difficult as trade groups such as the Ohio Auto Dealers Association might have played a role through lobbyists in obtaining passage of the purportedly unconstitutional amendment. He also hints at the possibility that Byers Chevrolet realized that the statutory increase was constitutionally defective and proceeded to increase its rates nonetheless.

Gill states that the documentary service charge is a limited exception to the general statutory rule. Because of this, Gill contends that even if the amount of the fee charged is not excessive in light of the 2003 amendment, Byers Chevrolet still bears the burden of proving that the fee it charged falls within the exception. Thus, Gill argues that it would be inappropriate to dismiss the claim at this stage.

## III. Motion to Dismiss

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515 (1972); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1982); *Smart v. Ellis Trucking Co.*, 580 F.2d 215, 218 n.3 (6th Cir. 1978); *Westlake v. Lucas*, 537 F.2d 857, 858

10

(6th Cir. 1976). Although the court must apply a liberal construction of the complaint in favor of the party opposing the motion to dismiss, *Kugler v. Helfant*, 421 U.S. 117, 125-26 n.5 (1975); *Smart*, 580 F.2d at 218 n.3; *Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975), a court will not accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations. *See Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971); *Sexton v. Barry*, 233 F.2d 220, 223 (6th Cir. 1956). In reading a complaint, however, a court will indulge all reasonable inferences that might be drawn from the pleading. *See Fitzke v. Shappell*, 468 F.2d 1072, 1076 n.6 (6th Cir. 1972).

When determining the sufficiency of a complaint in the face of a motion to dismiss pursuant to Rule 12(b)(6), a court will apply the principle that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See also McClain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232 (1980); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983); *Neil v. Bergland*, 646 F.2d 1178, 1184 (6th Cir. 1981); *Parker v. Turner*, 626 F.2d 1, 7 (6th Cir. 1980). Because the motion under Rule 12(b)(6) is directed solely to the complaint itself, *Roth Steel Prods.*, 705 F.2d at 155; *Sims v. Mercy Hosp. of Monroe*, 451 F.2d 171, 173 (6th Cir. 1983), the court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail. *See Scheuer*, 416 U.S. at 236; *McDaniel v. Rhodes*, 512 F.Supp. 117, 120 (S.D. Ohio 1981). A federal court cannot consider extrinsic evidence in determining whether a complaint states a claim upon which relief can be granted. *See Roth Steel Prods.*, 705 F.2d at 155; *Sims*, 451 F.2d at 173.

11

A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. *See United States v. School Dist. of Ferndale*, 577 F.2d 1339, 1345 (6th Cir. 1978); *Westlake v. Lucas*, 537 F.2d at 858; *Dunn*, 697 F.2d at 125. Rule 8(a)(2) simply requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Dunn*, 697 F.2d at 125; *Westlake*, 537 F.2d at 858.

The court will grant a defendant's motion for dismissal under Rule 12(b)(6) if the complaint is without any merit because of an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *See generally Rauch v. Day & Night Mfg Corp.*, 576 F.2d 697 (6th Cir. 1978); *Ott v. Midland-Ross Corp.*, 523 F.2d 1367; *Brennan v. Rhodes*, 423 F.2d 706 (6th Cir. 1970).

It is not necessary that a plaintiff set forth in a complaint the legal theory on which plaintiff relies if the complaint sets forth sufficient factual allegations to state a claim showing that plaintiff is entitled to any relief which can be granted. *See Rohler v. TRW, Inc.*, 576 F.2d 1260, 1264 (7th Cir. 1978); *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974); *New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20, 24-25 (4th Cir. 1963).

12

## IV. Analysis

### A. First Claim–Truth in Lending Act

If a subsequent act or occurrence renders inaccurate TILA disclosures which were accurate at the time they were made, the resulting inaccuracy does not constitute a violation of the requirements of TILA. 15 U.S.C. §1634. Though the Sixth Circuit Court of Appeals has interpreted §1634, its opinion did not reach a situation like the one at present where a plaintiff is alleging that a defendant was offering initial credit rates that it intended to switch for less favorable rates. *Begala v. PNC Bank, Ohio, N.A.*, 163 F.3d 948, 950-51 (6th Cir. 1998).

Both the Fifth and the Seventh Circuit Court of Appeals have held that initial credit rate offers that were later changed as a result of subsequent failure to obtain financing did not constitute violations of §1634, even though the plaintiffs in both cases alleged that the lenders had no intent to extend credit at the stated rates. *See Clark v. Troy and Nichols, Inc.*, 864 F.2d 1261, 1264 (5th Cir. 1989)(stating TILA does not provide a cause of action against a lender for "bait and switch" techniques "under which [the borrower] would receive different less favorable terms of interest" than initially offered) and *Janikowski v. Lynch Ford, Inc.*, 210 F.3d 765, 769 (7th Cir. 2000)(stating that the practice of "spot delivery" does not violate TILA). However, the Third Circuit Court of Appeals, in dicta, has stated that were it presented with the issue, it might decide differently. *Rossman v. Fleet Bank Nat'l Assoc.*, 280 F.3d 384, 398 (3rd Cir. 2002). In *Rossman*, the Court stated it was "at least debatable" that the dissenting opinion in *Clark*–which argued that deliberate bait and switch techniques were violations of TILA–had "the better understanding of the accuracy required by TILA." *Id.*

Gill alleges in his amended complaint that Byers Chevrolet's offer of the 5.9% interest

13

rate was not merely rendered inaccurate by subsequent occurrence but that it was at all times intentionally deceptive as Byers Chevrolet never meant to honor the offer. Thus, Gill has claimed that the inaccuracy was not merely due to a proper condition subsequent as Byers Chevrolet contends. However, Gill's claims that Byers Chevrolet initially attracted him with a low interest offer that it never meant to go through with only to switch his contract to a less favorable interest rate later looks very much like the bait and switch or spot delivery techniques presented in *Clark* and *Janikowski*. The consensus is in favor of holding that this type of practice does not constitute a violation of TILA. Thus, the facts alleging that Byers Chevrolet engaged in spot delivery practices are insufficient to state a claim under TILA upon which relief can be granted.

Under Rule 10(c), an exhibit that is attached to the complaint is "part thereof for all purposes." Thus, when considering a motion to dismiss, the Court should refer to the exhibits attached to the complaint as well as the complaint itself.

A finance charge "includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 CFR §226.4(a). This includes insurance premiums that are written in connection with a credit transaction. 12 CFR §226.4(b)(8). To comply with the requirements of TILA, a creditor must disclose any finance charge, using that term. 15 U.S.C. §1638(a)(3).

Gill states that Exhibit 1, the October 30 retail installment sales contract between Gill and Byers Chevrolet "suggests" an additional inaccuracy under TILA because it lists a $55 charge for "Vendor's Single Interest Insurance" in the itemization of amount financed instead of listing it as a separate finance charge. Although Gill did not claim directly in the amended complaint that the

14

failure to list the $55 as a finance charge was in violation of TILA, the attached contract, Exhibit 1, does show this amount itemized as part of the amount financed. It is proper for the Court to consider the attached exhibits as well as the amended complaint itself, however, this lone figure on Exhibit 1, without more, is insufficient to state a claim even under the liberal notice pleading standard of Rule 8.

Gill contends that Byers Chevrolet violated TILA by giving him an advancement in the sale price of the Aveo without listing it as a finance charge. However, this claim is not alleged anywhere in his amended complaint or attached exhibits. Although Gill lists in the amended complaint the difference in both the cash price and interest price of the October 30 and December 2 contracts, the amended complaint does not allege a claim that the changed sale price and interest rate amounted to an advancement in price that was required to be listed as a finance charge. Thus, the amended complaint does not state a claim for which relief can be granted on these grounds.

### B. Second Claim--Fair Credit Reporting Act

Rule 8 requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," while Rule 9 enumerates specific claims that must be pled with particularity. Fed. R. Civ. P. 8(a)(2). The U.S. Supreme Court has stated its reluctance to require pleading with particularity beyond what is enumerated in Rule 9. *Swierkiewixz v. Sorema N.A.*, 534 U.S. 506, 513 (2002)( "this Court, however, has declined to extend such exceptions to other contexts"). Thus, Gill is only required to meet the Rule 8 standard when pleading his FCRA claims.

In order to bring a claim under the "user" provisions of 15 U.S.C. §1681(b), plaintiff

15

must make sufficient allegations to show that the defendant used or obtained his consumer report

without authorization, or in some cases, under false pretenses. *See* 15 U.S.C. §1681(b)(c)(f) and

§1681(q).

Several provisions of 15 U.S.C. §1681(b) only apply if the defendant at issue is a

consumer reporting agency, which is defined as

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis,
> regularly engages in whole or in part in the practice of assembling or evaluating
> consumer credit information or other information on consumers for the purpose of
> furnishing consumer reports to third parties, and which uses any means or facility
> of interstate commerce for the purpose of preparing or furnishing consumer
> reports. 15 U.S.C. §1681(a)(f).

In turn, a consumer report means "any written, oral, or other communication of any information

by a consumer reporting agency bearing on a consumer's credit worthiness." 15 U.S.C.

§1681(a)(d). Thus, if it is a person's practice to regularly assemble or evaluate consumer credit

information for the purpose of communicating that information to third parties for a fee, dues, or

on a cooperative nonprofit basis, then that person is a consumer reporting agency.

In this case, the amended complaint alleges that Byers Chevrolet is a "user" of consumer

reports for the purposes of the FCRA, but it failed to allege that it was a "consumer reporting

agency." However, the amended complaint does allege that it was Byers Chevrolet's routine and

customary practice to shop consumer transactions to different lending institutions. (Am. Compl.

¶51). He also contends in his reply memorandum that, on information and belief, this practice

requires Byers to routinely and customarily use, obtain, and assemble data about customer

creditworthiness and to furnish it to these lending institutions. This inference is not unwarranted

and can be drawn from the amended complaint itself. Thus, Gill has pled sufficient facts to

16

allege that Byers Chevrolet is a consumer reporting agency and that it has used and obtained Gill's consumer report and furnished it to third parties.

### C. RISA Claim

Though Rule 8 only requires notice pleading, it still must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See Conley v. Gibson*, 55U.S. 41, 47 (1957).

With one exception, Gill does not allege facts in his amended complaint to support his generalized contention that "defendants willfully contracted for and/or received charges, fees, interest, or other things of value not expressly permitted by, and/or charges, fees, interest, or other things of value in excess of those permitted by RISA." (Am. Compl. ¶118). This exception is the $95 charge which Gill directly challenges in ¶¶119-20.

Under O.R.C. §1317.07, a retail seller is not allowed to "charge, contract for, or receive from any retail buyer, any further or other amount for examination, service brokerage, commission, expense, fee or other thing of value." An exception to the general "no charge" provision of O.R.C. §1317.07 is that a retail seller may charge "[a] documentary service fee customarily and presently being paid on May 9, 1949, in a particular business and area" if it does not exceed a certain amount.

The amount allowable for a documentary service charge under O.R.C. §1317.07 at the time of these facts was $100 as a result of a 2003 amendment raising the previous $50 amount. *See* 2003 H.B. No. 95; *Hook v. Baker*, 352 F. Supp. 2d 839, 845-46. The amendment has not been declared unconstitutional, though in 2006 it was superseded by another amendment

17

declaring the limit of a documentary service charge to be $250.

A retail buyer who is charged more than the allowable rate in O.R.C. §1317.07 "may recover the total amount of finance charges paid to the retail seller,"O.R.C. §1317.08(D). Further, no contract in excess of O.R.C. §1317.07's allowable charge "shall be enforceable with respect to that excess indebtedness or charge against any retail buyer." O.R.C. §1317.08(A)(1).

In order to recover on a charge in excess of O.R.C. §1317.07, the plaintiff must show that the overcharge was a wilful violation of RISA. The Southern District has held that mere inclusion of an amount in excess of the allowable amount under O.R.C. §1317.07 on a printed contract form constitutes a wilful violation of the statute. *Hook*, 352 F. Supp. 2d at 846-47 As the Court states, "'the buyer need not show that the seller knew the act violated the law; the buyer need only show the seller intended to impose a charge which violates the act.'"*Id.*(quoting *Sonn v. Taylor*, 1993 Ohio App. LEXIS 5051, 1993 WL 382248, *7 (Ohio App. 4 Dist. 1993)).

The amended complaint alleges that the $95 fee charged by Byers Chevrolet was in violation of O.R.C. §1317.07. Byers Chevrolet raises the defense that this charge was a documentary service fee that was within the amount allowable by O.R.C. §1317.07. The amended complaint alleges that the 2003 amendment to O.R.C. §1317.07 is unconstitutional, and, thus, any fee charged in excess of $50 is an automatic violation of the statute. Byers counters with the proposition that even if the 2003 amendment were unconstitutional, then it is still not liable because it complied in good faith with the requirements of the law. Since Byers Chevrolet's assertion that the $95 charge was a documentary service charge is a defense which it has the burden of proof to establish, the issues raised in the brief are not appropriate for summary disposition on the pleadings. The allegations of the amended complaint are sufficient to state a

18

RISA claim upon which relief can be granted.

**V. Conclusion**

For the reasons stated above, the Court HOLDS that defendant's February 28, 2006

motion to dismiss (doc. 21) plaintiff's first cause of action is meritorius; and, therefore, it is

GRANTED, but the Court HOLDS that defendant's February 28, 2006 motion to dismiss (doc.

21) plaintiff's second and sixth causes of action is without merit; and, therefore, it is DENIED.

This lawsuit continues as to plaintiff's claims (1) the Fair Credit Reporting Act (2) the Equal

Credit Opportunity Act (3) the Ohio Consumers Practices Act (4) breach of contract (5) the Ohio

Retail Installment Sales Act (6) fraud and breach of fiduciary duties and (7) tortious

nondisclosure.

United States District Judge

19